Williams, J.
By the will of Charles M. Campbell, his executor was directed to sell certain real property of which he died seized, and pay one-fourth of the proceeds to his son, Henry M. Campbell. John D. Thompson qualified as executor of the will, in Knox county, in 1873, and afterwards sold the property in accordance with the will, and received the proceeds. The share of Henry under the will amounted to something over fourteen thousand dollars, but before its payment he died intestate, in. Knox county, and the right to receive the money, it is conceded, vested in his personal representative, no other disposition thereof having been made by the will. He left a widow who received her share of his personal estate, and an infant daughter (Elizabeth) his only heir at law, whose share, amounting to the sum of $9,558.34, was demanded by Samuel R. Gotshall, who had become the administrator of Henry’s estate.
*224 The widow of Henry married Marcus A. Miller, and they removed from the county of Knox to the state of Tennessee, taking with them the minor child, Elizabeth, where Miller procured his appointment as guardian of her estate. He presented an authenticated transcript of his appointment together with a cop;}' of his bond as such guardian, to Thompson, who then paid him the last mentioned amount of the money bequeathed to Henry by his father’s will, taking from Miller the following receipt: “Mount Vernon, Ohio, September, 1892. $9,558.34. I, Marcus A. Miller, as the guardian of Elizabeth Campbell, - infant daughter of the late Henry M. Campbell, deceased, she being the only child and sole heir at law of said decedent, do hereby acknowledge to have received of John D. Thompson, sole acting executor of the estate of the late Charles M. Campbell, deceased, father of the said Henry M. Campbell, the sum of nine thousand, five hundred and fifty-eight and thirty-four one hundredth dollars, being the full distributive share of my said ward of the legacy and bequest to the said Henry M. Campbell under the will of his father, the said Charles M. Campbell.
Marcus A. Miller, Guardian as Above.”
No application was made to the probate court of Knox county for an order authorizing the payment of the money to Miller, nor was any proof of his appointment filed in that court, nor any order obtained for such payment.
Thompson, also, about the same time, paid to the administrator of Henry’s estate the sum of fifty dollars, for which the following receipt was given: “Mt. Vernon, Ohio, Sept. 15,1892. $50.00.
Received of John D. Thompson, executor of the estate of the late Charles M. Campbell, deceased, the sum of fifty dollars, ($50.00), which I agree to and do receive in full satisfaction of all claims due or to become due to me, either in my own right or as admin *225 istrator of the estate of Henry M. Campbell, deceased, for commissions on funds in the hands of said executor coming to the heirs of said Henry M. Campbell; I having made claim that the whole of said Henry M. Campbell’s share in the said Charles M. Campbell’s estate should be paid to me as the administrator of said Henry M. Campbell’s estate, while the said Thompson as such executor claimed, and the heirs of- said Henry M. Campbell were insisting upon the right to have the said share paid directly to the said heirs of said Henry M. Campbell, and thus depriving me of all commissions thereon'; and now this amount is paid to me by and with the consent of the widow and heir of said Henry M. Campbel], deceased, as a compromise and in full satisfaction of my said claim-
S. R. Gotshall, Administrator of Henry M. OamiJbell.”
Thereafter Thompson filed his final account as executor of the will of Charles M. Campbell, including in the account the two receipts above given, and claiming credit for their respective amounts. No exceptions Avere filed to the account, and it was approved and confirmed by the court, after due publication of notice. Some time after that, Thompson died testate and Thomas D. Banning qualified as his executor ; and, the administrator of Henry’s estate having resigned, Harry Gotshall was appointed his successor, and brought the action below.
These facts are shown by the uncontroverted allegations of the pleadings, and the agreements of the parties. Issues were joined upon various allegations of bad faith on the part of Thompson in the payment of the money to Miller, and of deception and misrepresentation in obtaining the receipt from Samuel R. Gotshall. It Avas claimed by the plaintiff, and denied by the defendant, that the money was paid by Thompson to Miller *226 in pursuance of an agreement between them that the latter should apply a part of the money to the discharge of an individual obligation of his on which Thompson was bound, a part to the payment of a debt which Miller owed Thompson, and the balance to be used by Miller in business of a speculative character for his own benefit; and that Thompson so made the payment knowing Miller was pecuniarily irresponsible.
On the trial of the action Samuel R. Gotshall, the predecessor of the plaintiff as administrator, was permitted to testify to various admissions and statements of Thompson concerning the allegations made against him. Objection was made to this testimony on the ground that the witness was incompetent to give testimony in regard to any fact which occurred prior to Thompson’s death. The overruling of that objection and the admission of the testimony presents one of the questions made in this case. The witness was not a party to the action, and by no express provision of the statute was his testimony rendered incompetent. The contention is, that it should have been excluded under that clause of section 5242 which provides that when a case is plainly within the reason and spirit of the three preceding sections, “though not within the letter, their principle shall apply”; the claim being that the testimony admitted was plainly within the reason and spirit of that provision of section 5241 which excludes the testimony of an assignor of a chose in action, in respect to any matter- to which, if a party, he would not be permitted to testify. The reason for excluding the testimony of an assignor, as provided by section 5241, does not seem applicable to a resigned administrator or executor. Before the enactment of that provision it was not uncommon to make assignments of claims for the purpose of enabling the assignor, by his testimony, to establish the claim for his own benefit, in an action by his assignee against the representative of an estate. *227 Then, the assignment of a claim is usually accompanied with a liability of the assignor in case the proof is insufficient to enable the assignee to recover upon it. So that the assignor, in such cases, is a party in interest, though not of record, and his testimony is practically in his own behalf. Upon the resignation of the personal representative, the title tp the assets of the estate, and all the rights and duties of further administration, devolve- upon his successor by operation of law, and he ceases to have any interest in the estate. For this reason it is quite generally held that when an administrator has resigned, or been removed, he is a competent witness in behalf of his successor, in all respects as if he were a stranger to the estate. In BurcVs Executor’s v. McGregor’s Admr., 2 Grant Gas., 353, an attempt was made to bring a discharged administrator within the rule which excludes an assignor of a chose in action from being a witness to support his claim. But the court said that, “the discharge of one administrator and the appointment of another is nothing like an assignment. The discharged administrator has-nothing to do with the appointment of his successor in that trust. He makes no transfer of the claims of the decedent. He receives no value for them. He is, therefore, a competent witness to support them.” And in Rapalje on Witnesses, that author, on page 112, says that: “The authorities even at common law, are quite harmonious in conceding the competency of an executor or administrator who has resigned, or has been removed or superseded, to testify in favor of his successor in the trust, and this even if proceedings are pending to reverse the action of the court removing him. He is no longer a party nor liable for costs.”
It is further urged that as the testimony admitted related in part to a transaction between the witness and Thompson, that part was incompetent and should have been excluded. But as said in Farley v. Lisey, *228 55 Ohio St., 627-631: “The statute has reference to the adverse character which the parties sustain toward each other as parties to the action, and not necessarily to their relation as parties to the transaction which is the subject of the action or defence.”
The payment by Thompson, to Miller the Tennessee guardian of the infant heir of Henry M. Campbell, of the money represented by the receipt of Miller hereinbefore set forth, is relied on as an equitable defense to the action brought by the plaintiff below; and the failure of the court to render judgment thereon discharging the defendant from liability, is assigned as error here. It is conceded that upon the death of Henry the legacy was payable to his personal representative, and not to his heir; but it is claimed that since the latter was ultimately entitled to the money, the payment to the guardian should, in equity, be treated as payment to the personal representative, and by the latter to the heir, as by this means the expense of further administration and circuity of action would be avoided, and all substantial rights preserved. In support of this contention cases are cited which hold that where there are no debts of an estate, the heirs may resort to a court of equity for division and distribution of the assets, or, when sui juris, may make division and distribution among themselves by agreement, without administration. That doctrine has little relevancy here. A foreign guardian is not entitled, merely by virtue of his appointment and qualification, to receive money belonging to his ward in the hands of an executor or administrator in this state. In Story on Conflict of Law, sec. 504®, the rule is stated to be, that, “no foreign guardian can virtute officii exercise any rights, powers, or functions,' over the movable property of his ward situated in a different state or country from that in which he obtained his letters of guardianship.” And, since whatever privileges are accorded such guardian in that respect in another *229 state or country, are conferred merely as a matter of comity, it necessarily follows that their existence and enjoyment may be made subject to such regulations and conditions as the state or country in which the property is situated may deem it just and proper to impose. In the absence of any statute on the subject it seems to have been usual and necessary to resort to ancillary guardianship in the state where the property was situated, or make application to a court having chancery powers for a proper order authorizing the foreign guardian to exercise control over the personal estate of the ward so situated, or remove it from the state; and in such cases the courts have the discretionary power to make such order as should be deemed for the best interest of the ward. In this state that power is appropriately vested in the court of probate, which has exclusive jurisdiction of all probate and testamentary matters, and the control of the conduct of executors, administrators and guardians, and the settlement of their accounts. Section 6279, of the Revised Statutes, provides that: “In any case in which a guardian, not appointed in this state, and his ward, are both non-residents of this state, and the ward is entitled to money or other property in the lawful custody of any executor, administrator or other person in this state, such guardian may by order of the probate court of the proper county, upon filing therein the proof named in the second preceding section, and giving notice to such custodian as therein prescribed, be permitted to demand, receive or recover by suit, such money or other property and remove the same, unless the terms of limitation attending the rights by which the ward owns the same conflicts with such removal.” The second preceding section referred to, is Sec. 6277 of Revised Statutes, which requires that the foreign guardian making the application for the order therein provided for, shall file in the probate court, “an exemplification from the record of the court mak *230 ing the foreign appointment, containing all the entries and proceedings in relation to his appointment and his giving bond, with a copy thereof, and of the letters of guardianship, all authenticated, as required by the act of congress in that behalf;” and before such application shall be heard, or any action taken thereon by the court, at least 30 days’ written notice shall be served on the custodian of the money, specifying the object of the application and the time when the same will be heard. And it is further provided that no such order shall be made unless at the time of the hearing the state or territory in which the guardian was appointed has made a similar statutory provision; and the court may, in any case, deny the application, unless satisfied that it would be to the interest of the ward to grant the same.
Compliance with these provisions by a foreign guardian is necessary in order to invest him with the right to receive or recover from an executor or administrator in this state moneys belonging to his ward, and to remove the same to another state; for, it is only by virtue of the order of the probate court that, in the langugage of the statute, the foreign guardian is “permitted to receive the money or other property” of the ward “and remove the same.” These are just and salutary provisions, designed for the protection, mot only of the executor or administrator, but also of the interests and estates of infant wards. They plainly show that however formal the application may be, the court is not necessarily required to make the order requested, but is clothed with a large discretion, similar to that formerly exercised by courts of chancery, and may refuse to grant the order if satisfied it will be detrimental to the interests of the ward. There was no compliance with these statutory provisions, by Miller, nor any attempt to comply with them, which was known to Thompson when he paid over the money; and this gives color to the claim made by the plaintiff that there was some ulterior *231 purpose in the transaction looking to the personal advantage of both, to the prejudice of the ward.
Miller being without authority to demand and receive the money, its payment by Thompson was also without authority, and constitutes no defense to the plaintiff’s action. Whether it would be different if the money had ultimately reached the heir after becoming of age, or had been expended for her benefit in a lawful manner, is a question not before us for decision. Assuming that in such a case, Thompson having paid the money in good faith would be entitled in equity to subrogation to the rights of the heir against the personal representative of her father, or might as equitable assignee, set up her right in defence of the plaintiff’s action, it is clear that case is not before us. Apparently in pursuance of an understanding when the money was paid, a part of it was at once applied in discharge of Thompson’s individual liability for Miller, a part in satisfaction of a debt due from Miller to Thompson, and the balance embarked in a disastrous enterprise of Miller by which in a brief time it was irretrievably lost; and his bondsmen became hopelessly insolvent.
The only other question we deem it necessary to notice, is whether the settlement of the final account of Thompson as executor is a bar to this action. The claim is, that as the account includes vouchers for the amount paid Samuel R. Gotshall for commission, and the amount paid to Miller, its settlement, so long as it is not opened up or impeached, is conclusive. And it undoubtedly is, so far as the payments represented by the vouchers are concerned, and against those to whom payments were made. But it has been the settled law of this state since Swearingen, Admr., v. Morris, 14 Ohio St., 424, that such a settlement showing payment to one not entitled thereto, is no bar to an action by the person who is entitled to the money. The settlement and order of distribution does not have *232 the effect of determining who is the rightful distributee, but is a general order to pay to the person lawfully entitled to receive payment. The conclusive effect of the settlement, as said in the case just cited, is founded on the condition that the executor or administrator has paid or delivered to the person entitled thereto, the money or other property in his hands. It may be remarked here, as it was in that case, that “the money was not ordered out of his (the executor’s) hands by a court of competent jurisdiction having the parties in interest before it. He voluntarily paid it away, and now relies upon a subsequent approval of what he had done, to turn wrong into right.” The final account of Thompson shows no payment to the plaintiff below, and its approval presents no obstacle to the maintenance of his action for the recovery of the money to which he is legally entitled.
A claim is made here on a cross-petition in error, that the plaintiff should have been awarded interest for a longer period than was allowed by the trial, court. But, without entering upon a discussion of the subject, we are not disposed to disturb the judgment in that respect.

Judgment affirmed.